# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Peninsula Components, Inc., | ) | Case No. 25-cv-349 |
| Plaintiff, | ) | |
| v. | ) | |
| Penn Engineering & Manufacturing Corp., | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Peninsula Components, Inc. ("Peninsula") brings this action against Defendant Penn Engineering & Manufacturing Corp. ("PEM"), and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action for false advertising, unfair competition, and commercial disparagement under federal and state law. It arises out of PEM's posting and distribution of a video advertisement that misrepresented the outcome of prior litigation between the parties, falsely characterized evidence introduced at trial, and disparaged Peninsula in an effort to place Peninsula in a negative light and gain an unfair commercial advantage for PEM.

## THE PARTIES

2. Plaintiff Peninsula Components, Inc., is a California corporation with its principal place of business at 1300 Industrial Road, Suite 21, San Carlos, California 94070.

3. Defendant Penn Engineering & Manufacturing Corp. is a Pennsylvania corporation with its principal place of business at 5190 Old Easton Road, Danboro, Pennsylvania 18196.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338, and 1367, and 15 U.S.C. § 1121.

5. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391 because events or omissions giving rise to this action occurred in this District, and the defendant is subject to personal jurisdiction in this District.

**BACKGROUND**

6. Peninsula was founded by William Gardiner in 1982 to provide solutions to original equipment manufacturers ("OEMs") for product designs by working closely with the OEM design engineers.

7. Among other things in the fields of mechanical and fabricated components, Peninsula also manufactures and distributes self-clinching fastener products such as nuts, studs, and standoffs, for use in a variety of industrial applications.

8. Peninsula and PEM are competitors in the industrial self-clinching fastener industry. PEM is the dominant market leader in that industry and operates and sells its products throughout the United States and globally.

9. Peninsula holds a significantly smaller portion of the industrial self-clinching fastener market than PEM.

10. In 2019, PEM initiated a lawsuit against Peninsula in the United States District Court for the Eastern District of Pennsylvania, bringing 34 claims of trademark infringement, false advertising, unfair competition, false designation of origin, and trademark counterfeiting. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, No. 19-cv-513.

11. PEM claimed that Peninsula violated federal and state laws by: (a) use, publication and distribution of cross-reference charts listing Peninsula's and PEM's product lines, (b) publication of certain self-clinching product information referred to as "performance data," (c) use of an Internet marketing technique known as "keyword conquesting," (d) use of a search tool on the Peninsula website, (e) resale of genuine PEM products, (f) sale of a square-in-square floating fastener product, and (g) display of "Pem" in some Google advertisements.

12. In the years that followed, Peninsula was granted summary judgment on many of PEM's claims.

13. Shortly before the parties were set to begin trial on the remaining claims, PEM voluntarily dismissed with prejudice its claims based on its floating fastener product configuration.

14. The parties proceeded to a jury trial on the following remaining issues: (1) Peninsula's publication of product performance data on its website and in sales drawings, which PEM alleged constituted false advertising under the Lanham Act, 15 U.S.C. § 1125(a); (2) Peninsula's Google advertisements that included "Pem," which PEM alleged infringed its trademarks in "PEM"; and (3) Peninsula's use of cross-reference charts

listing the parties' product lines, which PEM alleged constituted false advertising and infringed its trademarks in "PEM" and dozens of purported "common law" marks that PEM claimed identified certain of its products.

15. With respect to the first issue, Peninsula acknowledged that it published the same product performance data as PEM. PEM argued that this data was false because Peninsula's products did not perform exactly the same as PEM's products. PEM also argued that Peninsula did not test its products to ensure they met the published data.

16. Regarding the second issue, Peninsula acknowledged that the word "Pem" appeared in a few Google advertisements linking to its website during three limited time periods due to the mistakes of its advertising vendors.

17. With respect to the third issue, Peninsula maintained that its use of cross-reference charts amounted to fair and lawful competition. Peninsula also maintained that PEM's purported common law marks were not valid trademarks.

18. On November 1, 2024, after a week-long jury trial, the jury returned a verdict in favor of Peninsula on all claims except for PEM's trademark infringement claim related to Peninsula's use of "Pem" in some Google ads. *See Penn Engineering & Manufacturing Corp. v. Peninsula Components, Inc.*, No. 19-cv-513, Dkt. 462.

19. With respect to PEM's false advertising claim, the jury found as follows:

FALSE ADVERTISING

**Question 7.** Do you find that plaintiff Penn Engineering has proved that defendant Peninsula made literally false statements about Peninsula's own products?

Yes ✓      No _____

If the answer to Question 7 is "Yes," proceed to Question 8.

If the answer to Question 7 is "No," proceed to Question 11.

**Question 8.** Do you find that plaintiff Penn Engineering has proved that any literally false statements had a tendency to deceive a substantial portion of Peninsula's intended audience?

Yes _____      No ✓

Proceed to Question 9.

**Question 9.** Do you find that plaintiff Penn Engineering has proved that any literally false statements were material, in that they were likely to influence customers' purchasing decisions?

Yes ✓      No _____

Proceed to Question 10.

**Question 10.** Do you find that plaintiff Penn Engineering has proved a likelihood of injury in terms of declining sales, loss of good will, or similar harm as a result of any literally false statements?

Yes _____      No ✓

Proceed to Question 11.

**Question 11.** Do you find that plaintiff Penn Engineering has proved that defendant Peninsula made misleading statements about Peninsula's own products?

Yes ✓      No _____

If the answer to Question 11 is "Yes," proceed to Question 12.

If the answer to Question 11 is "No," do not answer the remaining Questions.

**Question 12.** Do you find that plaintiff Penn Engineering has proved that customers were actually deceived by any misleading statements?

Yes _____      No ✓

Proceed to Question 13.

**Question 13.** Do you find that plaintiff Penn Engineering has proved that any misleading statements were material, in that they were likely to influence customers' purchasing decisions?

Yes ✓      No _____

Proceed to Question 14.

**Question 14.** Do you find that plaintiff Penn Engineering has proved a likelihood of injury in terms of declining sales, loss of good will, or similar harm as a result of any misleading statements?

Yes _____      No ✓

*See id.* at 6-7.

20. Thus, while the jury concluded that PEM proved that Peninsula made false or misleading statements about Peninsula's own products and that such statements were material, the jury's verdict did not specify *what* it found false or misleading, nor did it find for PEM on the other elements of a false advertising claim—deception and injury.

21. The jury accordingly found *against* PEM on its false advertising claim.

22. Prior to trial, the district court issued an order bifurcating the liability phase from the damages phase, as PEM sought only equitable relief—injunctive relief and disgorgement. Because the damages phase has yet to occur, the litigation remains pending, and judgment has not yet been entered.

23. Before the case was submitted to the jury, Peninsula moved for judgment as a matter of law under Rule 50(a) on a number of grounds, including that PEM had conceded that it did not own any of the trademarks at issue in the case and had not offered any evidence that, as a purported exclusive licensee of the trademarks, it had the right to bring claims such as trademark infringement or false designation of origin based on Peninsula's use of the trademarks at issue. The district court reserved ruling on Peninsula's motion.

24. Following the jury's verdict, which rejected all of PEM's remaining claims except those based on the appearance of "Pem" in limited Google advertisements, the district court heard argument on Peninsula's motion but ultimately denied the motion.

25. The district court also denied a purported Rule 59 motion filed by PEM, which sought to put on evidence at the damages phase of the trial in support of PEM's

false advertising claim that the jury had rejected.

26. The damages phase of the trial, which has yet to be scheduled, will focus exclusively on PEM's claim involving the Google advertisements that displayed "Pem."

27. Despite that the lawsuit is ongoing and that PEM was unsuccessful on nearly all of its claims, PEM issued a press release on December 3, 2024, in which it sought to create the false and/or misleading impression that it was successful in the litigation. A copy of the press release is attached as Exhibit A.

28. PEM posted this press release to its LinkedIn page, where it garnered 94 likes and several congratulatory comments.

29. Peninsula subsequently learned that PEM created, posted, and distributed a video advertisement on or around December 19, 2024 ("the December 19 video"), in which it again misrepresented the outcome of the parties' litigation, as well as facts disclosed in the litigation. *See* https://www.pemnet.com/company/news/video-highlights-pennengineering-litigation-finds-pencom-made-false-statements-about-their-products/ (last viewed 12/19/24); *see also* https://www.penn-eng.com/news/ (last viewed 1/2/25), attached as Exhibit B.

30. In the December 19 video, PEM cherry-picked snippets of deposition testimony of Peninsula employees Jennifer Leong and Gregg Summers that were played via video at trial, as well as the trial testimony of William Gardiner, to effectuate a false and/or misleading narrative that PEM had prevailed over Peninsula at trial, that Peninsula does not test any of its products, and that the jury concluded that Peninsula's products are of lesser quality than PEM's.

31. For example, PEM published video deposition testimony of Ms. Leong, an engineering manager at Peninsula, in which she answered, "No," to the question "Are you involved at all in the testing of Pencom parts?"

32. PEM published this out-of-context snippet of Ms. Leong's testimony in order to convey a message that Peninsula does not test its parts, despite knowing, based on documents and testimony provided during the course of litigation, that (1) Peninsula *does* test its parts, and (2) testing is simply not part of Ms. Leong's department's responsibilities.

33. As another example, PEM also published the following exchange from the recorded video testimony of Gregg Summers:

> "Q: So there are products that PENCOM has that were not performance tested, but are advertised with performance data?
> 
> A: Yes."

34. PEM intentionally left out, however, the immediately succeeding exchange:

> "Q: And do you know why that is, why is that the case?
> 
> A: Because they may have been reverse engineered and the product isn't that complicated, as long as you get the dimensions correct."

*See* Ex. C, Dep. Tr. 66:21-23.

35. Throughout the litigation, Peninsula produced evidence that it was able to comply with published performance data in part because it reverse engineered certain PEM products, and that reverse engineering fastener products is a simple process.

8

36. PEM utilized only a small, out-of-context portion of Mr. Summers's testimony, however, to convey a false and misleading message that Peninsula does no testing of its parts.

37. PEM's counsel relied on these same, out-of-context excerpts of Ms. Leong's and Mr. Summers's testimony during his closing argument at trial. *See* Ex. D, Nov. 2, 2024 Tr. at 4:21-24, 13:7-23, 15:2-18.

38. When Peninsula's counsel challenged this attempt to mislead the jury at trial, *see id.* at 23:6-25:7, PEM's counsel was forced to concede that his statement was not correct. In the words of PEM's counsel, "What Mr. Summers said was that they [Peninsula] test some products." *Id.* at 62:23-24.

39. In the December 19 video, PEM also followed the excerpted portions of Peninsula employees' testimony with blanket statements and excerpted portions of PEM employee testimony that, for example, PEM tests all of its parts.

40. The PEM employee testimony, which was undermined on cross-examination at trial, was also presented in a misleading and incomplete manner to convey a false narrative that Peninsula does not test any of its products while PEM tests all of its products.

41. PEM also included transcribed, out-of-context excerpts of Mr. Gardiner's trial testimony in the December 19 video.

42. Towards the end of the video, PEM also displayed a list of the jury's findings that Peninsula made false and misleading statements about its own products, and that the statements were material and likely to influence purchasing decisions. PEM

did not, however, include any information regarding the elements of its false advertising claim that the jury flatly rejected, nor did it anywhere disclose that its false advertising claim was unsuccessful.

43. PEM posted the December 19 video publicly on its website and shared the video on LinkedIn to its more than 25,000 followers, including current and/or potential customers of Peninsula.

44. The creation of the video was a deliberate act intended to harm Peninsula's business and reputation by creating a false narrative that portrays Peninsula in a negative light.

45. PEM's deliberate actions harmed Peninsula's business and reputation.

46. For example, upon information and belief, PEM's LinkedIn post linking to the false and misleading December 19 video garnered "likes" and at least one comment disparaging Peninsula.

47. Additionally, a representative of Peninsula was recently scheduled to meet with a prospective customer about a business relationship. Shortly after PEM posted its December 19 video, the prospective customer cancelled the meeting, and when asked why, the prospective customer expressed that it had seen PEM's December 19 video and was concerned that Peninsula was unreliable.

48. On or around December 20, 2024, PEM removed the video from its website and deleted its LinkedIn post linking to the video.

49. On December 23, 2024, counsel for plaintiff sent counsel for PEM a letter demanding that PEM: (1) preserve the video and provide counsel for Peninsula with a

copy; (2) preserve all documents and information related to the video and to PEM's statements regarding the litigation with Peninsula; (3) preserve and provide all information about the creation of the video, in any form or format, including (a) who at PEM authorized the posting and distribution of the video; (b) who at PEM was involved in the compilation and preparation of content for the video; and (c) who produced the video; (4) preserve and provide all information about (a) how many times the video was viewed; (b) who viewed the video; and (c) any feedback received from viewers of the video; and (5) identify all manner and modes of posting and distribution of the video, including but not limited to Internet-based platforms and mailing or emailing lists.

50. PEM did not respond to any of Peninsula's requests. Rather, its only response, from its counsel in the litigation, was to assert that the videos of Ms. Leong and Mr. Summers were "shown in open court (and thus part of the official transcript) and also included as admitted exhibits to the transcript."

## **Count I – False Advertising Under the Lanham Act (15 U.S.C. § 1125)**

51. Plaintiff repeats and incorporates by reference each of the foregoing paragraphs of the Complaint.

52. PEM's actions constitute false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

53. PEM created, publicly posted, and distributed the December 19 video as a means of commercial advertising and promotion for its fastener products.

54. PEM sells its fastener products in interstate commerce.

55. PEM's December 19 video misrepresented the nature, characteristics, and

qualities of Peninsula's goods, services, and commercial activities, for example by falsely and/or misleadingly conveying that, *inter alia*, PEM prevailed in litigation against Peninsula, Peninsula does not test its products, and that the jury concluded that Peninsula's products are of lesser quality than PEM's products.

56. The false and/or misleading statements in the December 19 video were made publicly available and distributed to customers and have a tendency to deceive a substantial portion of PEM's intended audience.

57. The false and/or misleading statements in the December 19 video regarding the nature and quality of Peninsula's products and the testing of Peninsula's products are likely to influence customers' purchasing decisions.

58. The false and/or misleading statements in PEM's video have injured and are likely to continue to injure Peninsula by way of loss of good will, declining sales, or similar harm.

### Count II – False Advertising (State Law)

59. Plaintiff repeats and incorporates by reference each of the foregoing paragraphs of the Complaint.

60. California's false advertising law, Cal. Bus. & Prof. Code § 17500 et seq., prohibits any unfair, deceptive, untrue, or misleading advertising.

61. PEM's December 19 video falsely and/or misleadingly suggests, inter alia, that Peninsula does not test its products, that the jury concluded that Peninsula's products are of lesser quality than PEM's products, and that PEM prevailed over Peninsula in litigation.

62. The statements in PEM's December 19 video are likely to deceive a reasonable consumer regarding, inter alia, the quality of Peninsula's products, the testing of Peninsula's products, and the outcome of the litigation between Peninsula and PEM.

63. As a result of PEM's false and/or misleading video advertisement and disparagement of Peninsula, Peninsula has suffered and will continue to suffer reputational and economic injury, including but not limited to lost customers and lost sales.

### Count III – Unfair Competition (State Law)

64. Plaintiff repeats and incorporates by reference each of the foregoing paragraphs of the Complaint.

65. California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, prohibits any "unlawful, unfair or fraudulent business act or practice."

66. Alternatively, common law unfair competition under Pennsylvania law covers a broad range of unfair business practices.

67. PEM's publication of the false and/or misleading December 19 video constitutes an unlawful or unfair business practice and/or method of competition under state law.

68. As a result of PEM's false and/or misleading video advertisement and disparagement of Peninsula, Peninsula has suffered and will continue to suffer reputational and economic injury, including but not limited to lost customers and lost sales.

### Count IV – Commercial Disparagement (State Law)

69. Plaintiff repeats and incorporates by reference each of the foregoing paragraphs of the Complaint.

70. PEM's December 19 video included disparaging and false and/or misleading statements concerning Peninsula's business.

71. In publicly posting the December 19 video on its website and distributing the video to its mailing list, including to current and/or potential customers, PEM intended to cause Peninsula pecuniary loss or reasonably should have recognized that the publication would result in pecuniary loss.

72. As a result of PEM's disparaging and false and/or misleading video advertisement, Peninsula has suffered and will continue to suffer pecuniary loss by way of lost sales and/or damaged customer relationships.

73. PEM knew, in publishing the video advertisement, that the statements included in the video were false and/or misleading insofar as they, for example, suggested that Peninsula does not test its products, that the jury concluded that Peninsula's products are inferior to PEM's products, or that PEM prevailed in litigation against Peninsula.

74. PEM is accordingly liable to Peninsula for common law commercial disparagement.

## REQUEST FOR RELIEF

**WHEREFORE,** plaintiff Peninsula Components, Inc., requests that this Court enter an order and judgment:

a) Enjoining defendant Penn Engineering & Manufacturing Corp. from creating, publishing, displaying, and/or sharing the December 19, 2024 video advertisement pertaining to prior litigation between Peninsula and PEM, or any or similar video or printed advertisements stating or suggesting that PEM prevailed in litigation against Peninsula, Peninsula does not test its products, or that the jury concluded that Peninsula's products are of lesser quality than PEM's products;

b) Enjoining defendant Penn Engineering & Manufacturing Corp. from publishing, displaying, and/or sharing further false and/or misleading advertisements regarding Peninsula;

c) Awarding Peninsula damages in an amount to be determined at trial;

d) Awarding Peninsula attorneys' fees and costs; and

e) Awarding any other relief as the Court deems just and proper under the circumstances.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Peninsula hereby demands a trial by jury on all triable issues.

*/s/ Samuel W. Silver*
Samuel W. Silver (Pa. I.D. 56596)
ssilver@welshrecker.com
Bruce P. Merenstein (Pa. I.D. 82609)
bmerenstein@welshrecker.com
Abigail T. Burton (Pa. I.D. 334450)
aburton@welshrecker.com
WELSH & RECKER, P.C.
306 Walnut Street
Philadelphia, PA 19106
(215) 972-6430

Richard A. Nebb*
rnebb@dergnoah.com
Michael E. Dergosits*
mdergosits@dergnoah.com
Igor Shoiket*
ishoiket@dergnoah.com
DERGOSITS & NOAH LLP
One Embarcadero Center, Suite 720
San Francisco, CA 94111
(415) 705-6377

*Pro hac vice motions forthcoming*

*Attorneys for Plaintiff*
*Peninsula Components, Inc.*

Dated: January 21, 2025